MERRILL v. PLAINFIELD.

Strictly speaking, arguments, or inferences, or matters of law ought not to be stated in the pleading, and if stated in the bill, they will not be taken as admitted though not denied in the answer, and though stated in the answer and not denied in the replication, yet the plaintiff will not be held to have admitted them, if in either case the facts on which these conclusions are founded and from which they are drawn are properly denied, or avoided by an allegation of new facts.

A town cannot properly vote to pay money to its selectmen, or those who have acted in that capacity, for costs and damages sustained by them in resisting criminal prosecutions brought against them for refusing to insert names upon the check-list; and money thus voted cannot be collected.

An injunction will be granted by this court upon such town and its officer, upon the petition of any person who is a tax-payer in such town, and liable to be assessed for the payment of any part of such sum, to prevent the payment of money so illegally voted.

IN EQUITY. Abel Merrill, Ai Read, George Bryant, Samuel B. Duncan, George C. Freeman, George Westgate, Isaac W. Westgate, and Cyrus S. Richards, all of Plainfield, in said county of Sullivan, yeomen, complain against the town of Plainfield, in said county, a municipal corporation duly established by the laws of said State, Albert S. Eaton, Farnam J. Morgan, and Orra C. Pierce, of said Plainfield, yeomen, Selectmen of said Plainfield, and Benjamin C. Smith, of said Plainfield, yeoman, Treasurer of said Plainfield, and say :

That in the warrant for the last annual meeting of said Plainfield, duly notified and holden at the Town Hall, in Meriden Village, in said Plainfield, on Tuesday, the tenth day of March, 1863, the fifth article was : "To see if the town will vote to indemnify Benjamin C. Daniels, Cyrus Smith, and John B. Rowell, Selectmen of said town, in the year eighteen hundred and sixty, and pay them their reasonable charges, costs and expenses which they have sustained on account of divers prosecutions brought against them for their proceedings when acting in their official capacity as such Selectmen."

That under this article, at said annual meeting, duly holden at the Town Hall, in Meriden Village, in said Plainfield, on Wednesday, the eleventh day of March, 1863, by adjournment from Tuesday, the tenth day of March, 1863, said town of Plainfield, "Voted, That the Selectmen be directed to pay the sum of five hundred sixty-one dollars and twenty cents, as money paid for counsel, &c., in defending the suits against Daniels, Smith, and Rowell, named in the fifth article, prosecuted in behalf of the State."

That all the prosecutions and suits against said Benjamin C. Daniels, Cyrus Smith, and John B. Rowell, for charges, costs and expenses incurred in defending against which said town of Plainfield thus instructed their Selectmen to pay said sum of five hundred and sixty-one dollars and twenty cents, were criminal prosecutions against said Daniels, Smith and Rowell, or some of them, for their alleged misconduct, in preparing, regulating, correcting and managing the check list of legal voters in said town of Plainfield, while acting as Selectmen thereof;

That in the management, preparation, regulation and correction of the check list of legal voters in said town of Plainfield, by the Selectmen thereof as aforesaid, said town of Plainfield had no right, interest, or duty whatever, and could not lawfully appropriate money to indemnify said Benjamin C. Daniels, Cyrus Smith and John B. Rowell, for their costs, charges and expenses sustained on account of prosecutions against them for alleged misconduct, as Selectmen thereof, in relation to such check list, or to pay them the sums expended by them for counsel, or otherwise, in defending suits or prosecutions against them for such alleged misconduct;

That the vote of said town of Plainfield instructing their Selectmen to pay the sum of five hundred and sixty-one dollars and twenty cents, as money paid for counsel, &c., in defending the suits against said Daniels, Smith and Rowell, as aforesaid, was wholly unauthorized, illegal, and void, and can only be carried into effect by unlawfully applying to that purpose money raised by taxation upon the polls and ratable estate of said town of Plainfield;

That said town of Plainfield, and said Albert S. Eaton, Farnam J. Morgan, and Orra C. Pierce, present Selectmen of said Plainfield, and said Benjamin C. Smith, present Treasurer of said Plainfield, notwithstanding the want of authority, illegality and invalidity of said vote of said town of Plainfield, pretend to regard the same as authorized, legal, binding and valid, and threaten to carry the same into effect by paying over to said Benjamin C. Daniels, Cyrus Smith, and John B. Rowell, said sum of five hundred sixty-one dollars, and twenty cents, from money in the treasury of said town, raised by taxation upon the polls and ratable estate of said town of Plainfield;

That the plaintiffs are residents and tax-payers of said town of Plainfield, and have good reason to fear and do fear that unless restrained and prevented by the injunction of this Honorable Court, the said town of Plainfield, and said Albert S. Eaton, Farnam J. Morgan, and Orra C. Pierce, Selectmen thereof, and said Benjamin C. Smith, Treasurer thereof, will carry said vote into effect by paying to said Benjamin C. Daniels, Cyrus Smith, and John B. Rowell, from the money in the treasury of said town, said sum of five hundred sixty-one dollars and twenty cents, as they threaten to do, in violation of law, justice and equity, and of the rights and interests of the plaintiffs and the other residents and tax-payers of said Plainfield;

Wherefore the plaintiffs pray that said town of Plainfield, its officers, servants and agents, and said Albert S. Eaton, Farnam J. Morgan, and Orra C. Pierce, Selectmen thereof, and said Benjamin C. Smith, Trea-

surer thereof, may, by a decree of this Honorable Court, be perpetually enjoined and restrained from paying to said Benjamin C. Daniels, Cyrus Smith, and John B. Rowell, or to any or either of them, or to any person for them, or any or either of them, said sum of five hundred sixty-one dollars and twenty cents, or any other sum, to indemnify them for charges, costs and expenses incurred in defending themselves, or any or either of them, against prosecutions brought against them, or any or either of them, for alleged misconduct in preparing, regulating, correcting, managing or otherwise controlling in any way the check list of legal voters in said town of Plainfield, while acting as Selectmen thereof, and from in any way carrying out or attempting to carry out the aforesaid vote of said town of Plainfield, directing their Selectmen to pay said sum as money paid for counsel and otherwise in defending said Daniels, Cyrus Smith and Rowell, against such prosecutions ; and that the plaintiffs may have such other and further relief as may be just and equitable.

This bill was taken *pro confesso,* as to all the defendants except the town of Plainfield.

The answer of the town of Plainfield sets forth :—

That there are, from time to time, and have been, for many years, many transient persons resident in said town of Plainfield, who have little or no property taxable in said town, and who have no permanent interest in said town or its prosperity, and whose votes may often affect injuriously the pecuniary interests of said town, and that said town in its corporate capacity has a real pecuniary interest in having its check list of legal voters so lawfully regulated that no names will be put upon it of such persons as have not that permanent and enduring interest in the welfare of said town, which is contemplated by and implied in that clause in the Constitution of New Hampshire, which provides that "every person qualified as the constitution provides, shall be considered an inhabitant for the purpose of electing and being elected into any office or place within this State, in the town, parish and plantation where he dwelleth and hath his home."

And during the term of office, in the years 1859 and 1860, of the said Daniels, Smith, and Rowell, as Selectmen of said town, certain difficult and doubtful questions of law and fact in regard to the regulation of the check list of the legal voters in said town arose which the said Selectmen were obliged to determine, and did in good faith determine, according to their best judgment and ability. And prior to the September Term of the Supreme Judicial Court, for the county of Sullivan, in the year 1860, the said Selectmen were compelled to answer before John J. Prentiss, Esq., a Justice of the Peace for said county, to six complaints for alleged misconduct in regard to the regulation of said check list, all of which prosecutions failed. And at said September Term an indictment was found against said Selectmen for alleged misconduct in regard to the regulation of said check list, which said indictment was at said Term duly tried, and said Selectmen were honorably acquitted, and afterwards at the January

Term, in the year 1861, of said court, two indictments were found against said Selectmen for alleged misconduct in regard to said check list, one on the complaint of one Buchanan, and one on the complaint of one Stowell, and the said indictment found on complaint of said Buchanan, was tried, and on the trial certain questions of law were reserved and transferred to the Law Term of said court for consideration, and the said indictment found on the complaint of the said Stowell was continued, to wait the determination of said questions of law, the counsel for the State alleging that the disposition of said last mentioned indictment would depend upon the determination of said questions of law, and at the September Term of said court in the year 1861, an indictment was found against said Rowell for alleged misconduct in regard to the regulation of said check list, which indictment was continued, and the said indictment on complaint of Stowell was also continued, on the like allegation of the State's counsel that their disposition would depend upon the final determination of said questions of law. And afterwards at the Law Term of said court, held at Keene, in the county of Cheshire, on the fourth Tuesday of December, 1862, said questions of law were determined in favor of said Selectmen, and thereupon at the January Term of said court, held at Newport, on the fourth Tuesday of January, 1863, the counsel for the State declined further to prosecute either of said indictments which had been continued from term to term, and the entry "nolle prosequi" was made in each of them. And so all the prosecutions which had been instituted against said Selectmen, for such alleged official misconduct in regard to said check list, have wholly failed, and it has appeared that the said Selectmen have rightly and in good faith determined the difficult questions of law and fact in which their said decisions have been so called in question. And the said Selectmen have in good faith expended the said sum of $561.20, in their defence against said prosecutions.

And this defendant having, as it believes, a real and pecuniary interest in the intelligent, faithful, and independent regulation of said check list, is willing and desirous to indemnify its said officers against the heavy and oppressive expenses to which they have been subjected in making their said defence, and for this purpose has passed the vote which in the plaintiff's bill is complained of.

And the said town avers that in its corporate capacity it has a real pecuniary, as well as other interest, right and duty in the management, preparation, regulation and correction of said check list, and that said vote was not unauthorized, illegal, or void, but on the contrary was well authorized and lawful.

*Fowler & Chandler*, for the plaintiffs.

I. Although, when the case is heard upon the bill and answer, the answer must be taken to be true, yet no matters of law, which are suggested in the answer, or argued from the facts stated, are admitted; for, strictly speaking, arguments, or inferences and matters of law, ought not to be stated in pleading, and if stated, they will be disregarded by

the court. Story's Eq. Pleading, sec. 452; Cooper's Eq. Pleading, 111; Mitford's Eq. Pleading, by Jeremy, 211, 212; *Ford* v. *Peering*, 1 Vesey, Jr., 77; *Williams* v. *Steward*, 3 Merivale, 472, 492; *East India Co.* v. *Henchman*, 1 Vesey, Jr., 91, Sumner's Ed. n. 3; *Myddleton* v. *Ld. Kenyon*, 2 Vesey, Jr., 391, Sumner's Ed. n. 1; *Penfield* v. *Nunn*, 5 Simons, 405; *Mills* v. *Brown*, 2 Scam. 549; *Gable* v. *Andrus*, 1 Green's Ch. 66; *Niles* v. *Anderson*, 5 How. (Miss.) 365; *Baker* v. *Booker*, 6 Price, 381; *Jones* v. *Jones*, 3 Merivale, 173; 1 Chitty's Pleading, 214; Stephens' Pleading, 347; 1 Daniell's Ch. Prac. 601, 602, and notes.

II. The answer of Plainfield admits the plaintiff's case, and seeks to avoid it by general allegations of matters of belief and conclusions of law from facts not particularly stated, and is therefore not entitled to any weight against the bill; while the plaintiffs may avail themselves of the admissions and allegations contained therein which go to establish the case made by the bill. *Patterson* v. *Gaines*, 6 Howard (U. S.) 550; *Bartlett* v. *Gale*, 4 Paige, 503; *Miller* v. *Avery*, 2 Barbour's Ch. 582; 1 Daniell's Ch. Prac. 599, note; *Union Bank of Georgetown* v. *Geary*, 5 Peters, 99, 112; 2 Daniell's Ch. Prac. 985, note; *Copeland* v. *Crane*, 9 Pick. 73, 78; *Givens* v. *Tidmore*, 8 Alab. 745.

III. The court will no more regard matters of law stated in an answer, unless correctly stated, although the case may be heard upon the bill and answer, than they will an averment of fact, which is contrary to any fact of which the court takes judicial notice; and such an averment is always disregarded. 1 Daniell's Ch. Prac. 602, 603, and notes; *Mortimer* v. *Frazer*, 2 M. & C. 173; *Taylor* v. *Barclay*, 2 Simons, 213; *Dolder* v. *Ld. Huntingfield*, 11 Vesey 292; *Newell* v. *Newton*, 10 Pick. 470; *Hawks* v. *Kennebeck*, 7 Mass. 461; *Ripley* v. *Warren*, 2 Pick. 592, Story's Eq. Pl. sec. 24; 1 Greenl. Ev. secs. 4, 5, 6,

IV. Disregarding, therefore, those portions of the answer which state conclusions of law, or are purely argumentative, and taking the admissions and allegations therein which go to establish the case made by the bill, the case, upon the bill and answer, presents the simple question, whether a town can legally and rightfully, against the will and remonstrances of a portion of its tax-payers, raise and appropriate money to indemnify its selectmen for the expenses incurred by them in defending themselves against criminal prosecutions for their alleged misconduct in the management of the check list in such town; and we respectfully submit that they cannot; and that it makes no difference what may have been the result of those prosecutions:

1. Towns are corporations with limited powers, strictly defined and prescribed by statute, and they have no right or authority to raise money by assessment, and appropriate the same to purposes not within the scope of those powers, even though the majority of their inhabitants expressly vote so to raise and appropriate it. *Rumford* v. *Wood*, 13 Mass. 193; *Shrank* v. *Supervisors*, 3 Rawle 347; *Parsons* v. *Goshen*, 11 Pick. 396; *Stetson* v. *Kempton*, 13 Mass. 272; *Norton* v.

*Mansfield*, 16 Mass. 48 ; *Hooper* v. *Emery*, 2 Shep. (14 Me.) 375 ; *Anthony* v. *Adams*, 1 Met. 284 ; *Bancroft* v. *Lynnfield*, 18 Pick. 566 ; *Rice* v. *Wadsworth*, 27 N. H. 104 ; *Wadsworth* v. *Henniker*, 35 N. H. 189 ; *Gove* v. *Epping*, 41 N. H. 539 ; *Petersburgh* v. *Mappin*, 14 Ill. 193 ; *Brown* v. *Marsh*, 21 N. H. 81 ; *Allen* v. *Taunton*, 19 Pick. 485 ; *Woodbury* v. *Hamilton*, 6 Pick. 101.

2. To indemnify their selectmen against prosecutions for alleged misconduct in the management of the check list, or to reimburse to them the expenses incurred in defending themselves against such prosecutions, is not within the scope of the powers conferred upon towns, or one of the purposes for which towns may rightfully raise or appropriate money. The only clause in the statute, under which the power could be argued to exist, is that authorizing them to raise money "for all the necessary charges arising within the town." But it is well settled that such "*charges*" only are "*necessary*," within the meaning of this clause, as are "the effect of a legal discharge of their corporate duty." *Stetson* v. *Kempton*, 13 Mass. 279 ; *Bangs* v. *Snow*, 1 Mass. 181, 190 ; *Babbitt* v. *Savoy*, 3 Cush. 530 ; *Ainsworth* v. *Dean*, 21 N. H. 400 ; *Allen* v. *Taunton*, 19 Pick. 485 ; *Cooley* v. *Granville*, 10 Cush. 56 ; *Task* v. *Adams*, 10 Cush. 252 ; *Claflin* v. *Hopkinton*, 4 Gray 502 ; *Hooper* v. *Emery*, 14 Me. 375.

3. In managing and regulating the check list, the selectmen act, not as the agents or servants of the town, but as public officers of the State, in a judicial capacity, under the provisions of the statute ; and there would be no more propriety in holding the town liable or empowered to indemnify them for expenses incurred in defending themselves against prosecutions against them for alleged misconduct while acting in that judicial capacity, than there would be in holding it liable or empowered to indemnify every magistrate within its limits for the expenses he may have incurred in defending himself against suits for trespass or false imprisonment, brought against him for alleged official misconduct in the exercise of his powers as a justice of the peace in civil or criminal matters. In the management of the check list of legal voters, the town of Plainfield, as a municipal corporation, had no right, interest, or duty whatever ; and the vote to pay its selectmen the expenses incurred by them in defending themselves against prosecutions for alleged misconduct in that management, is simply a vote, unauthorized, illegal and void, to bestow a gratuity upon them at the expense of the tax-payers of the town. *Martin* v. *Brooklyn*, 1 Hill 545 ; *Vincent* v. *Nantucket*, 12 Cush. 103 ; *Holmes* v. *Nantucket*, 12 Cush. 107, n. ; *Anthony* v. *Adams*, 1 Met. 284 ; *Nelson* v. *Milford*, 7 Pick. 18 ; *Thayer* v. *Boston*, 19 Pick. 511 ; *Hurlburt* v. *Marsh*, 1 Root 520 ; *Lorillard* v. *Monroe*, 12 Barbour 161 ; *Millet* v. *Stoneham*, 13 Shep. (26 Me.) 78 ; *Fishkill* v. *Fishkill & Beekman Plank Road Co.*, 22 Barb. 634 ; *Hale* v. *Cushman*, 6 Metcalf 425 ; Comp. Stat. ch. 26, sec. 1 ; *Morrill* v. *Haines*, 2 N. H. 246 ; *Wadsworth* v. *Henniker*, 35 N. H. 189 : *Gove* v. *Epping*, 41 N. H. 539.

*Cushing*, for Plainfield.

In *Gove* v. *Epping*, 41 N. H. 539, the court says, speaking of certain votes of towns, that such votes "are void, and towns cannot be compelled, and generally will not be permitted to carry such votes into effect." We understand that the distinction is here recognized between cases where towns cannot be compelled by proceedings at law to give effect to their contracts, and those cases in which a Court of Chancery will interfere to prevent them from doing so.

The case *Gove* v. *Epping*, is an authority to show that towns cannot be compelled by law to give effect to a vote to indemnify selectmen against the expenses and costs of defending themselves against prosecutions for alleged mismanagement of the check list.

The question in the present case is, whether a court of equity will interfere to prevent a town, desirous of indemnifying its officers, from so doing. It is a question of chancery jurisdiction not determined at all by the case of *Gove* v. *Epping*.

It appears by the answer, which for the purpose of this discussion must be taken to be true, that there have been several prosecutions, all of which have been determined in favor of the selectmen; that several of these prosecutions depended upon the determination of the same question of law which the selectmen had in the course of their duty determined, and as the result showed, had determined rightly. On this state of facts, we say

I. That by the law of New Hampshire the responsibilities of the office of selectmen are not voluntarily assumed. Selectmen elect are obliged by law to take the oath of office and enter upon its duties immediately, are liable to a penalty if they do not do so, and cannot evade the responsibility without violating the law.

II. This responsibility is voluntarily imposed on the selectmen by the towns by electing them.

III. The towns are liable to be affected deeply in their pecuniary interests by the improper admission of voters, who have not that permanent interest in and connexion with the town which is required by the constitution of the State.

IV. It is for the interest of towns in a pecuniary point of view, that they should be permitted to encourage the independent and honest action of their selectmen in the preparation of the check list, by indemnifying them against charges and expenses to which they are wrongfully subjected in the honest and correct discharge of their duties.

V. It is just and right that they should do so.

SARGENT, J. The bill asks for a perpetual injunction to restrain the defendants from paying to a former board of selectmen of Plainfield the expenses incurred by them in defending themselves against prosecutions for alleged misconduct in the management of the check list of that town, while acting as selectmen thereof. The particular facts upon which the plaintiffs rely are stated in the bill. All the defendants, except the town of Plainfield, were defaulted at the first term, and as to them the bill is taken *pro confesso*.

The town of Plainfield denies none of the allegations in the bill, ex-

cept the legal ones that the town in its corporate capacity had no right, interest, or duty in the management, preparation, regulation and correction of the check list of legal voters in said town, by its former board of selectmen, and that the vote of the town to pay said board the expenses incurred by them in defending themselves against prosecutions for alleged misconduct in the management of the said check list, was unauthorized, illegal and void.  But it alleges that the town of Plainfield, had in its corporate capacity a real pecuniary, as well as other interest, right, and duty in the management, preparation, and correction of the check list of the legal voters of said town; and that the vote of the town aforesaid, was lawful and valid.

There is a motion on both sides that the court reject all the portions of the bill and answer, which merely state conclusions or inferences of law, and these motions are properly made.   For, although it may often be convenient to state such conclusions of law in pleading, to make the matters of fact more intelligible, yet, strictly speaking, arguments, or inferences, or matters of law ought not to be stated in the pleadings, and if stated in the bill, they will not be taken as admitted though·not denied in the answer, and though stated in the answer and not denied by the replication, yet the plaintiff will not be held to have admitted them, if in either case the facts on which these conclusions are founded, and from which they are drawn are properly denied, or avoided by an allegation of new facts.   1 Daniels' Ch. Pr. & Pl. 601 and 602, and cases cited; *Murch* v. *Concord Railroad*, 29 N. H. 33.

Let us then see what facts are admitted.   1. The town of Plainfield has voted to pay the sum specified, and for the purposes specified, to said former selectmen, at a legal meeting, duly notified and holden for that purpose.

2. That all the costs, charges, and expenses, thus voted to be paid by the town, were incurred by said selectmen in defending themselves against certain prosecutions and indictments against them for alleged official misconduct in regulating, &c., the check list of legal voters in said town.

3. That the plaintiffs are residents and tax-payers in said town, and that they fear said money will be paid over according to said vote, unless the town and its present officers are restrained by injunction.

These facts are admitted by the answer, and it alleges the additional fact, that the former selectmen were discharged in some way, in all these prosecutions, &c., and that they conducted in good faith and according to their best judgment and ability, and that they decided the questions submitted to them correctly.   This fact not being denied is to be taken as admitted.   The answer also alleges that there are from time to time, and have been for many years, many transient persons resident in said town of Plainfield, who have little or no property taxable in said town, and who have no permanent interest in said town or its prosperity, and whose votes may often affect injuriously the pecuniary interests of said town.   This fact is admitted because not denied.

It is claimed by the defendant that this gives the town such a direct pecuniary interest in the regulation of the check list, as to authorize them

to indemnify their selectmen against the expenses of criminal prosecutions for alleged official misconduct in the regulation of the check list. It has been held that a town may indemnify a surveyor of highways for liabilities incurred in the *bona fide* discharge of his duties, because the town is bound to repair highways, and is responsible for defects in them, and therefore has so direct an interest in the subject that it can adopt the acts of the surveyor acting as the agent of, and for the benefit of, the town in a matter of town affairs. His duties are the duties of the town. *Bancroft* v. *Lynnfield*, 18 Pick. 566.

So towns may bind themselves by vote to indemnify a collector of taxes from the costs and expenses of defending actions brought against him for acts done in the performance of his duties, because he acts by authority of the town and as their agent, at least in collecting the taxes raised by the town; and the town may ratify and affirm his act as the act of the town. *Pike* v. *Middleton*, 12 N. H. 278.

But it has been equally well settled that in case of officers of the town who act not as the agents or servants of the town, but in a judicial capacity, where the town has no direction or control of them, is not responsible for their fidelity, gains nothing by their diligence, and loses nothing by their carelessness, where the duties are imposed specifically by statute on the officer, and the town has no duty to perform, no right to defend, and no direct interest to protect, the town cannot properly indemnify the officer in the discharge of his duties, and any attempt to do so, any vote or contract to that effect, will be void. *Anthony* v. *Adams*, 1 Met. 284; *Stetson* v. *Kempton*, 13 Mass. 272; *Parsons* v. *Goshen*, 11 Pick. 396; *Vincent* v. *Nantucket*, 12 Cush. 103; *Martin* v. *Mayor of Brooklyn*, 1 Hill, 545, 551. And this applies especially to the case of selectmen in the correction, &c., of the check list of towns under our statute. *Wadsworth* v. *Henniker*, 35 N. H. 189; *Gove* v. *Epping*, 41 N. H. 539.

Nor is there any fact stated in the answer in this case which can affect the result. Upon the facts as stated, the interest of the town is altogether too remote and uncertain. The interest of the town would in that case be not in having certain names put on or kept off the check list, but in the way such persons might chance to vote on certain questions, provided they were allowed to vote at all. It must be some direct pecuniary interest in the act done or to be done, that warrants the town in indemnifying its officers against criminal prosecutions for alleged misconduct. In the correction of the check list the town as such has and can have no duty to perform, no right to defend, and no direct interest to protect.

We consider the cases of *Wadsworth* v. *Henniker*, and *Gove* v. *Epping*, *supra*, as conclusive upon this case, and we see no reason to overrule those decisions, or to question their authority. And as the town by this vote undertook to appropriate money in a manner unauthorized by law, any person who is a tax-payer in town and liable to be assessed for any part of such sum, may properly interfere in the way these petitioners have done, to prevent its payment and misapplication.

The prayer for a perpetual injunction is therefore granted.