EASTMAN & *a. v.* THAYER & *a.*

A mortgagee not in possession is under no obligation to pay the taxes on the mortgaged estate.

Where there has been no refusal by the mortgagee to render an account, and there is no controversy as to the amount due on the mortgage, a bill in equity to redeem will not be entertained

The right to redeem a mortgage that has been foreclosed will not be extended for the purpose of enabling the party who has such right to ascertain whether it will be for his interest to exercise it.

A charge of fraud in general terms is not sufficient.

When the alleged defects in a tax title appear upon the record, and would necessarily be exposed by the proof requisite to establish it, equity will not take jurisdiction to try the validity of such title on the ground that it is a cloud.

Tax liens devest all prior liens and incumbrances, and no title can pass by a collector's deed under the statute but an estate in fee simple.

BILL IN EQUITY, against Thayer, Aldrich, and Jackman, filed December 17, 1879, alleging that Thayer was seized of certain lands in Bethlehem; that he made a mortgage thereon, which is now held by Jackman; that Jackman has obtained judgment thereon, and is now in possession of the premises for the purpose of foreclosure; that the time of redemption will expire on or about December 26, 1879; that Thayer executed a second mortgage September 13, 1876, which is now owned and held by the plaintiffs; that the plaintiffs have commenced a suit on the notes, which is still pending; that in 1877 this property was taxed, and the taxes not having been paid, was sold by the collector and bought by the defendant Aldrich, and has been deeded to him; that the sale and conveyance for the taxes were unknown to the plaintiffs until after the time for redemption had expired; that the plaintiffs are informed and believe that the collector gave Thayer to understand, and intended that he should understand, that the taxes had been paid by or through Jackman, who was in possession, and that the sale was made to Aldrich to enable him to procure a title against Thayer, so that he could collect a debt due from Thayer; that the proceedings were in fraud, and were an attempt unjustly to deprive the plaintiffs of their rights.

The plaintiffs also say that the list of taxes for the year 1877 was not given by the selectmen to the town clerk for record till July 10, 1877; that the sale was for the poll tax assessed against Thayer, and for the tax assessed on another piece of land owned by him, as well as for the tax on the land in question; that the sale was June 15, 1878, and notice thereof was not posted until May 2, 1878; that there was no legal collector of taxes for 1877,

and that there are other fatal defects in the tax title, so that no title actually passed by the tax sale, yet Aldrich asserts his tax title to the injury and damage of the plaintiffs; that Jackman has been in possession of said property since December, 1878, receiving the rents and profits, and ought to have paid the taxes; that he neglected so to do, and has allowed the alleged tax title to become an incumbrance on the property and a cloud on the title.

The prayer is for an injunction restraining Aldrich from setting up or attempting to enforce his tax title, for a decree of foreclosure of the plaintiffs' mortgage, and for possession of the premises as against Jackman upon payment of the amount due on his mortgage, and for general relief.

The defendants Jackman and Aldrich demurred generally for want of equity, and on the ground of multifariousness. The bill may be referred to.

*S. C. Eastman*, for the plaintiffs.

*Carpenter*, for Jackman & Aldrich. The bill purports to be brought for two purposes: (1) to set aside a tax title in Aldrich; (2) to redeem Jackman's mortgage.

I. 1. No fraud is charged upon Aldrich. He had a right to buy the premises at the tax sale, and with the purpose of holding the same absolutely if not redeemed, and *a fortiori*, with the purpose of compelling Thayer to pay, in addition to the taxes, an unsecured debt. The allegation that the "proceedings were in fraud, etc.," amounts to nothing, the particular acts of alleged fraud not being set forth. Sto. Eq. Pl., *s.* 251.

The charge that the "collector of taxes gave Thayer to understand that the taxes had been paid" is immaterial, it not being averred that Aldrich had any part in or knowledge of this action of the collector. All of the defects pointed out by the bill in the proceedings and sale are such as necessarily appear upon the record. As against Aldrich, then, the question is, whether a bill can be maintained against a purchaser of land at a tax sale to set aside his deed as a cloud upon the title, upon the sole and exclusive ground that the proceedings were illegal and the sale fatally defective, where all the alleged defects in the title appear upon the record.

That such a bill can be maintained has never been held in this state, and the weight of authority is decisively against it. *Loud* v. *Charlestown*, 99 Mass. 208; *Hunnewell* v. *Charlestown*, 106 Mass. 350; *Norton* v. *Boston*, 119 Mass. 194; Cool. Tax. 542–544, and cases cited; 2 Sto. Eq. Jur., *s.* 700 *a*, and cases cited; *Cox* v. *Clift*, 2 N. Y. 118; *Scott* v. *Onderdonk*, 14 N. Y. 9. A collector's deed upon a sale of taxes is not in this state *prima facie* evidence of title.

2. The alleged defects pointed out by the bill do not affect the validity of the sale. They are, (1) that the list of taxes was not

given to the town clerk for record until July, 1877. But the statute (Gen. Sts., c. 53, s. 6) is directory merely. *Scammon* v. *Scammon*, 28 N. H. 419; *Orford* v. *Benton*, 36 N. H. 403.

(2) That the sale was for Thayer's poll tax, and for taxes upon another piece of land owned by Thayer. But Thayer was in possession, and the owner of the premises, both when the taxes were assessed and at the time of the sale, and they were properly sold "for all taxes assessed against" him. Gen. Sts., c. 54, s. 13; Laws, 1868, c. 1, s. 15.

(3) That the sale was June 15, 1878, and the notice thereof not posted until May 2 of that year. But the notice was amply sufficient, six weeks only being required. Gen. Sts., c. 54, s. 14.

(4) That there was no legal collector for the year 1877 authorized to make any sale. But it is enough that there was a collector *de facto*. That the collector who made the sale was such will be assumed in the absence of any averment to the contrary. *Tucker* v. *Aiken*, 7 N. H. 113; *Smith* v. *Messer*, 17 N. H. 420; *Bean* v. *Thompson*, 19 N. H. 290. It is submitted, therefore, with great confidence, that the plaintiffs make no case entitling them to relief in equity against Aldrich.

II. As against Jackman there is no equity in the bill, no case made entitling the plaintiffs to any relief. 1. There is absolutely nothing alleged whereby it appears that the plaintiffs have the slightest occasion to invoke the aid of a court of equity or any other court. No grievance, no injury, either already committed or threatened, is set forth, or suggested, even. The truth is, that up to the time of the filing of the bill, this defendant was always not only ready but anxious to receive the money due to him upon the mortgage, and that there never was any dispute about the amount due to him; that the plaintiffs never offered to redeem, or asked defendant to receive the money, and so, in the absence of any allegation to the contrary, must the court take the fact to be. What equity is to be found in permitting the plaintiffs to involve this defendant in expensive litigation, under the pretext of compelling him to do what he has ever been ready and anxious, but has never been requested, to do? A court of equity is bound to know that taxable costs are no indemnity. 2. The bill contains no offer to pay the amount which may be found due to the defendant. *Perry* v. *Carr*, 41 N. H. 371; *Beekman* v. *Frost*, 18 Johns. 544. 3. A bill of equity merely to redeem a mortgage, that is to say, a bill resting exclusively upon an alleged right to redeem without any other ground for equitable aid, cannot be maintained without either a tender, or a demand for an account, under the statute of July 3, 1829. Gen. Sts., c. 122, ss. 4–12. The statute of 1829 (Laws, 1830, p. 486) is in substance the same as the Massachusetts statute of 1821, and was enacted to cure the same evil. See our statutes of February 16, 1791, and of January 16, 1795. (Laws, 1815, pp. 195–198), and *Willard* v. *Fiske*, 2 Pick. 540.

Prior to that time, 1829, a mortgagor could redeem only upon and after a tender of the amount due upon the mortgage, which must be sufficient, at his peril. See statutes cited, and *Bailey* v. *Metcalf*, 6 N. H. 156. The act of 1829 provided in addition for redemption, in case of a refusal by the mortgagee to render upon demand a just and true account of the amount due to him.

It is clear that until the act of 1834 below mentioned, a mortgagor could not compel a mortgagee after a breach to receive the money due to him, or, in other words, to allow him to redeem without either a tender, or a demand for an account of the amount due, &c.

By the act of July 4, 1834, the equity jurisdiction of the court, conferred by the act of December 29, 1832, *s.* 9, was extended to " all cases respecting the redemption and foreclosure of mortgages," to be " exercised according to the established principles of chancery as far as shall be consistent with the laws and constitution of this state." The remedy provided by this statute is without doubt cumulative, but the statute of 1829 was left in full force; and where the object was to redeem only, no other grounds of equitable interference being claimed, that statute applies. In other words, the right of the mortgagor in this respect was not enlarged by the statute of 1834. He could no more maintain a bill in equity to redeem, than a petition, without first tendering to the mortgagee the amount due to him, or calling upon him for an account. *Wendell* v. *Bank*, 9 N. H. 404–417; *Currier* v. *Webster*, 45 N. H. 226, 230, 231.

This view is right and reasonable. It affords all needed protection as well to the mortgagor as to the mortgagee, and tends to prevent idle and unnecessary litigation. No other construction gives any force or effect to the statute of 1829 (G. L., *c.* 136, *ss.* 5–12), especially since the enactment of the statute of July 2, 1870, by virtue of which there is absolutely no difference between a petition under the statute and a bill in equity. Both have exactly the same form, are returnable to and heard by the same court. The " difference " suggested *obiter* by *Perley*, C. J., 46 N. H. 242, is without foundation. In proceedings by bill in equity to redeem, the foreclosure is necessarily suspended until the end of the suit, and this whether there be any special order to that effect or not.

BLODGETT, J. We have not found it necessary to consider the objection of multifariousness. The only question then is, whether the bill states a case against the defendants Jackman and Aldrich. We are of opinion that it does not.

The allegations against Jackman, so far as they relate to the tax title, are, substantially, that he has been in possession of the mortgaged premises since December, 1878, receiving the rents and profits, and ought to have paid the taxes in question, but that he permitted the premises to be sold for their non-payment, and the

consequent tax title to become an incumbrance on the property and a cloud upon the title. But there is no allegation that he had knowledge that the taxes were unpaid, or of the sale, before the time of redemption had expired. Neither is it alleged that there was or is any collusion between Aldrich and him, nor that he claims any interest in the tax title, nor that there have been any rents or profits from which the taxes could have been paid or the land redeemed.

It follows, then, that no actual, positive fraud is charged upon Jackman; and we think that his alleged negligence cannot be held to amount to constructive fraud, for while it would seem that there was negligence as to the payment of the taxes, he is no more chargeable with it than are the plaintiffs. Both had a like interest to preserve their respective mortgage liens, and, so far as appears, Jackman had no more knowledge of the assessment and sale than the plaintiffs had, and no better facilities for obtaining such knowledge; and not having acquired possession of the mortgaged premises until more than six months after their sale for the taxes, and knowledge of the sale not being charged, there was no more obligation on him to redeem than on them. Had the assessment and sale been after he got possession and was receiving an income, his obligation would have been quite different.

Relative to the matter of redemption, the bill does not allege that there is any controversy as to the amount due on the Jackman mortgage, or that the plaintiffs have ever offered to redeem, or that they are willing to pay the amount due upon it. On the contrary, without alleging any wrong on the part of Jackman touching the foreclosure of his mortgage or its redemption, and with no averment of their readiness to pay the mortgage debt, the plaintiffs invoke the aid of the court to stay the foreclosure for an indefinite period, until they ascertain whether it will be for their interest to redeem or not; and this, of course, will depend upon the validity of the tax title, the value of the mortgaged premises, and the result of their suit-at-law against Thayer.

We are aware of no precedent for the bill in this respect, nor of any principle of equity by which it can be held that Jackman should be subjected to expense and protracted litigation, when, for aught that appears, he is ready and anxious to receive the amount justly due to him. Courts can only decide upon the rights of parties as they exist, and have no jurisdiction to enable parties to try experiments *(Alexander* v. *Colcock,* 58 Tenn. 282, 284); and it is therefore sufficient to say, that this court has no jurisdiction to decide beforehand whether the plaintiffs can acquire a valid title to the land by the redemption of the Jackman mortgage, nor will it entertain a bill which seeks to keep the question of redemption open until various other litigated matters are determined, and until all the embarrassments and clouds around and upon the title are removed. The plaintiffs must decide the question of redemption

for themselves: asking for equity, they must do equity. The demurrer of Jackman is sustained.

The case made against Aldrich is, in some respects, one of more difficulty.

The bill charges in general terms that the proceedings connected with the tax sale "were in fraud, and were an attempt to unjustly deprive the plaintiffs of their rights." But it is not sufficient to charge fraud in such general terms. Sto. Eq. Pl. (9th ed.), *ss*. 251, 252; *Pearson* v. *Tower*, 55 N. H. 36–38. If fraud is charged in a bill, and the facts constituting it are not specifically set forth, it is not admitted by a demurrer. *Flewellen* v. *Crane*, 58 Ala. 627. If, however, the charge of fraud was well alleged, no fraudulent acts are pointed out on the part of Aldrich, or alleged to be within his knowledge. There is no allegation whatever that he procured the tax title by his own fraud, or by his violation of legal duty or public policy. The only charge against him in this respect is, that he bought the premises at the tax sale for the purpose of enabling him to procure a title against Thayer so that he might collect a debt of him which was unsecured. This was neither illegal nor inequitable, but simply the exercise of proper vigilance: the laws serve the vigilant, not those who sleep upon their rights. If, therefore, the bill can be maintained against Aldrich, it must be by reason of the proceedings upon which his title is based.

Waiving the question whether a party out of possession can maintain a bill to remove a cloud to the title of land (see *Campbell* v. *Allen*, 61 Mo. 581, *McLean* v. *Presley*, 56 Ala. 211, *Polk* v. *Pendleton*, 31 Md. 118, *Barron* v. *Robbins*, 22 Mich., 35, *Shaffer* v. *Whelpley*, 37 Wis. 334, *Herrington* v. *Williams*, 31 Tex. 448, *Douglass* v. *Nuzum*, 16 Kan. 515, and *Company* v. *Bedford*, 3 Nev. 399), the true inquiry is whether the tax deed in question constitutes a cloud which equity ought to remove. We hold that it does not.

A tax deed is not the title itself, nor even *prima facie* evidence of it, unless made so by statute. No presumption arises, from the mere production of it, that the facts upon which it is based had any existence. Black. Tax Tit. 430; 2 Wash. R. P. 545. They must be proved *aliunde*. The claimant must show affirmatively that the prerequsites of the statute authorizing the sale and conveyance have been strictly complied with. *Cahoon* v. *Coe*, 57 N. H. 556, and cases cited. The deed itself, at most, can give color of title only: by the mere sale, the purchaser takes no color of title. *Annan* v. *Baker*, 49 N. H. 161. The sale of land for taxes by a collector, being but the exercise of a naked power, not coupled with an interest in the land, his deed of it, from its very nature, does not necessarily cast a cloud upon the title: it is but a single link in the chain of title which must be preceded by many other equally vital links, which must appear by the record. It is obvious, there-

fore, that the deed of a collector, or any deed given in the exercise of a mere power, stands upon very different ground than ordinary deeds which are coupled with an interest. Nevertheless, taxes in this state being a lien upon lands may undoubtedly constitute a cloud upon the title, which a court of equity, for good cause, may and will remove. *Brooks* v. *Howland*, 58 N. H. 98.

What, then, is a cloud upon title? "A cloud upon one's title is something which constitutes an apparent encumbrance upon it, or an apparent defect in it,—something that shows *prima facie* some right of a third party either to the whole, or some interest in it." Cool. Tax. 542. The deed of a collector of taxes may or may not constitute such a cloud. It depends entirely upon circumstances. When its invalidity appears upon its face, or the proceedings upon which it is based do not show a compliance with the statute requirements, so that an inspection of the record, and a comparison of it with the law, will furnish a decisive test of its illegality, it does not constitute an encumbrance or apparent defect of title; and in no just sense can it be said to constitute a cloud. *Ib.* 542, and cases cited. "And, accordingly, it is now fully established that in such cases courts of equity will not interpose their authority to order a cancellation or delivery up of such instruments." Sto. Eq. Jur. (12th ed.), s. 700 *a.* When, however, the illegality or defect does not appear upon the record, but must be shown by evidence *aliunde*, so that the record would make out a *prima facie* right in one who should become a purchaser, and the evidence to rebut this case may possibly be lost, or be unavailable from death of witnesses or other cause, or when the deed given on a sale of the lands for the tax would by statute be presumptive evidence of a good title in the purchaser so that he might rely upon it until the illegalities were shown, courts of equity will exercise jurisdiction and extend relief on the ground that a cloud on the title exists or is imminent. Cool. Tax. 543, and Sto. Eq. Jur., s. 700, and numerous cases cited, to which many others might be added.

In the case before us, all the alleged defects in the tax title appear upon the record, and would necessarily be exposed by the proof requisite to establish it; and consequently equity will not take jurisdiction to try its validity.

The demurrer is sustained; and, as to Jackman and Aldrich, the entry is

*Bill dismissed.*

STANLEY, J., did not sit: the others concurred.

Upon the announcement of the opinion, the plaintiffs filed a motion as follows:

"The plaintiffs move for a rehearing, so far as the decision is inconsistent with the following positions:

"1. The plaintiff in a suit in equity to foreclose a mortgage may join a prior mortgagee as party. In such case, as to him, the bill

is a bill to redeem. If there is any defect in the statement of his case, it should not be dismissed till the plaintiff has had an opportunity to amend.

"2. The plaintiff may also join any one who has acquired the rights of the mortgagor subsequent to his mortgage.

"3. When real estate is taxed as resident, it may be sold after the year of lien has expired, so far as the interest of the person taxed is concerned. Such a sale of mortgaged real estate, taxed to the owner of the equity, carries the right to redeem to the purchaser. He is therefore in the place of the mortgagor, and is a proper party defendant to proceedings to foreclose.

"4. Being once properly in court, if he also claims by other title hostile to the plaintiff, he must assert it and defend it, or be foreclosed."

*S. C. Eastman*, for the motion. 1. The plaintiff, in a suit in equity to foreclose, may join a prior mortgagee as a party defendant. As to him, the bill is a bill to redeem. If there is any defect in the statement of the plaintiff's case, so that it does not allege all that should properly be alleged, the plaintiff should have an opportunity to amend.

The bill was undoubtedly drawn with the intention of stating such negligence on the part of Jackman as would make it inequitable for him to proceed with his foreclosure as against a subsequent mortgagee. We do not desire to ask the court to revise its conclusions, so far as this branch of the case is concerned.

There is also the redemption feature.

Can Jackman properly be made a party to a foreclosure suit? If he can, the bill should not be dismissed as to him, on account of the other defects, unless the plaintiff neglects to amend. As to this, the authorities as well as the reason of the law are all one way.

"As a general rule, all persons who have an interest in the mortgage or equity of redemption, which interest is apparent of record or known to the plaintiff, should be made parties to the suit." 2 Jones Mort., *s.* 1097.

"When a junior mortgagee seeks to redeem, he must make the mortgagor or other representatives of the realty a party, and the prior mortgagee as well. Though the object be merely to redeem a prior mortgage, the owner of the equity of redemption is a necessary party, because a court of equity always seeks to determine the rights of all parties interested in the estate; and to do this in such case, the decree should be that the second mortgagee redeem the first mortgage, and that the owner of the equity of redemption redeem the second mortgage, or stand foreclosed. If the owner of the equity of redemption be not made a party. his right to redeem remains open, and the first mortgagee may be exposed to another suit." St. Pl. 186; 2 Jones Mort., *s.* 1102; *Palk* v. *Clinton*, 12 Ves. 48: *Finley* v. *U. S. Bank*, 11 Wheat. 304.

On the subject of proper defendants in a foreclosure suit, Story says, "And hence it has been asserted to be the general (although not the universal) rule, that all encumbrancers, as well as the mortgagor, should be made parties, if not as indispensable, at least as proper parties to such a bill, whether they are prior or subsequent encumbrancers." Sto. Eq. Pl., s. 192 (2); 1 Dan. Ch. Pr. 214; *Wendell* v. *N. H. Bank*, 9 N. H. 417.

Where the proceedings require a sale of the mortgaged property, all the encumbrancers must be before the court. *Ensworth* v. *Lambert*, 4 Johns. Ch. 605.

It being, then, universally recognized that the prior mortgagee is a proper party to a bill to foreclose, and that in such case, as to him, it becomes a bill to redeem, the bill should not be dismissed as to Jackman, unless the plaintiffs fail to amend. *Hudnit* v. *Nash*, 16 N. J. Eq. 550; *Tucker* v. *Jackson*, Mar. T., 1881.

2. To a foreclosure suit, the mortgagor and any who have acquired his rights must be made parties. If they are not made parties, the foreclosure is still open as to them. 2 Jones Mort., ss. 1394–1396, 1406, 1439; Sto. Eq. Pl., ss. 84, 186; 1 Dan. Ch. Pr. 213, 214.

3. Aldrich is such a person. Whatever may be the defects of the tax title when set up against a preëxisting mortgage, the mortgagor cannot avail himself of them. The collector could sell any of his property for any portion of his tax, and hence could sell his interest in real estate for his poll tax. So, also, he could sell whatever interest he had in real estate, after the lien, which would have created a title against the whole world, had expired. *Gove* v. *Newton*, 58 N. H. 361. Hence Aldrich acquired by the sale the equity of redemption in this real estate. He consequently has the right to redeem from the hands of the plaintiffs. He becomes thereby just as necessary a party to a foreclosure suit as the mortgagor himself. If he should not be joined, the plaintiffs might, at some future day, be vexed with a suit to redeem. Equity always prefers to take a comprehensive jurisdiction over all the conflicting interests, and have the whole matter settled at one time by one decree.

As a bill to remove a cloud, the bill is defective. On this point, also, we do not ask the court to alter their determinations. But while the bill asks for the removal of a cloud, it also asks for a foreclosure, and to such a proceeding Aldrich is a necessary party. *Horton* v. *Saunders*, 13 Mich. 409.

4. When Aldrich is once properly in court, the familiar rule will apply. Jurisdiction being obtained, the court will not send the parties away with their controversy half ended. If Aldrich has any good title against the plaintiffs, he must set it up, or else be forever concluded by the decree. In this way we claim that we are entitled to and should have the relief asked for by the bill.

Jackman is not harmed. He is in possession, taking the rents

and profits.   The plaintiffs must offer to redeem, and he must render an account.   When that is done, no proceedings hostile to him are contemplated; nor can any course be taken that will harm him. Indeed, even if by chance his mortgage should not be redeemed, the investigation and determination of the tax title, at some other person's expense, must aid rather than injure him.   He must rejoice at having his battle fought for him, unless, indeed, he has a secret understanding with Aldrich to combine and crush out the second mortgage.

*P. Carpenter*, contra.

BLODGETT, J.   We are not asked to revise our conclusions on the points considered in the opinion, but to pass upon other matters to which our attention has been called by the plaintiffs' counsel for the first time in the argument of the motion.

The plaintiffs now put their case, as to Jackman and Aldrich, on the ground, that having a good bill of foreclosure against Thayer, it was proper to join Jackman as senior mortgagee for the purpose of redeeming the land from his mortgage, and to join Aldrich, as standing in Thayer's shoes, through his purchase at the tax sale, and therefore owning the equity of redemption only in the mortgaged premises.

Nothing new is urged relative to Jackman; and as to him the bill must therefore be taken as resting exclusively upon an alleged right to redeem his mortgage.   To entitle themselves to such right, the plaintiffs suggest that they desire an amendment to the bill averring their readiness to pay the mortgage; but we think no case for equitable aid would then be made.

The statute provides that the party who has the right to redeem a mortgage may demand from the mortgagee an account of all demands secured thereby; and if no account, or a false account, is rendered, he may apply to the court to have the amount due ascertained after deducting rents and profits received.   G. L., *c.* 136, *ss.* 8, 9.   The plaintiffs' case, then, does not come within the statute, nor does it disclose any ground for equitable relief, because it is obvious that it would be gross injustice to subject Jackman to the annoyance and expense of legal proceedings under the pretext of compelling him to do what he has never even been asked to do. And, therefore, if the court has the power, it will not exercise it and afford relief in a case like this where the party seeking it has no equity, and has wholly failed to comply with plain statute provisions which furnish an adequate and inexpensive remedy.   See *Brown* v. *Snell*, 46 Me. 490, which is directly in point;—but see, also, *Hall* v. *Hall*, 46 N. H. 240, 242.

Nor can the bill be maintained against Aldrich on the ground that he took Thayer's interest only by the tax deed.   The error in the argument for the plaintiffs on this point arises from a mis-

conception of the nature and effect of tax liens, as distinguished from attachment and other liens, which attach simply to the debtor's interest in the property, whereas, by the express terms of the statute (G. L., c. 58, s. 13), liens for taxes attach to the land itself, and all prior liens and incumbrances are devested. *Parker* v. *Baxter*, 2 Gray 185; *Dunlap* v. *Gallatin Co.*, 15 Ill. 7; *Atkins* v. *Hinman*, 2 Gilm. (Ill.) 449; *Jarvis* v. *Peck*, 19 Wis. *74. A tax title consequently breaks up all previous titles; and "no title can pass by a collector's deed under the statute, but an estate in fee simple." *Smith* v. *Messer*, 17 N. H. 420, 428. Hence, if Aldrich acquired any title by his deed, it was an estate in fee simple to the land in controversy, devested of all other liens thereon or titles thereto; and so it follows that he cannot be made a party to a bill or any other proceeding for the foreclosure of the plaintiffs' mortgage on the ground upon which they rely.

*Motion denied.*

STANLEY, J., did not sit: the others concurred.